**UNITED STATES DISTRICT COURT**　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:16-CR-96 (8) |
| | § | |
| JOHN EARL JACKSON | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant John Earl Jackson's ("Jackson") *pro se* Motion for Reduction of Sentence Pursuant to First Step Act 18 U.S.C. § 3582(c)(1)(A)(i) USSG Amendment Extraordinary and Compelling Reasons § 1B1.13 (#406). Jackson seeks compassionate release based on his mother's medical condition and his rehabilitation efforts. He also seeks a reduction of his sentence based on a retroactive amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The Government filed a Response in opposition to the motion (#412). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.　　<u>Background</u>

On November 3, 2016, a federal grand jury in the Eastern District of Texas returned a single-count Indictment charging Jackson along with eight co-defendants with Conspiracy to Possess with Intent to Distribute fifty (50) grams or more of methamphetamine "actual," in violation of 21 U.S.C. § 846. Jackson pleaded guilty to the charged offense on March 15, 2017, pursuant to a non-binding plea agreement. On November 2, 2017, the court sentenced Jackson to 262 months' imprisonment, followed by a five-year term of supervised release. Jackson is

presently incarcerated at Federal Correctional Institution Oakdale II ("FCI Oakdale II"), located in Oakdale, Louisiana.  Jackson's anticipated release date is May 22, 2034.

II.    Compassionate Release

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

> offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)      the defendant must have exhausted his administrative remedies;

(2)      "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)      the reduction must be consistent with the Commission's applicable policy statements; and

(4)      the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

A.      Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the

4

administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020)

(stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)).  Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021).  Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

Here, Jackson contends, and the Government agrees, that he has exhausted his administrative remedies.  Jackson attached to his motion documentation indicating that he submitted Requests for Administrative Remedy for compassionate release, which were received by the warden of the facility where he is housed on February 15, 2024.  Jackson did not, however, include his Requests for Administrative Remedy forms with his motion.  Probation reports that "[a]ccording to the BOP, on February 15, 2024, Mr. Jackson filed a Request for Administrative Remedy at his custodial institution, FCC Oakdale, in which he requested a Compassionate Release/Reduction in Sentence due to *his medical conditions*." (emphasis added). Jackson also includes a letter dated February 29, 2024, from Warden Felipe Martinez, Jr., denying his request.  Warden Martinez explains that Jackson does not qualify under the BOP's criteria for

compassionate release because he had not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less and that the BOP was capable of providing conventional treatment to manage his medical needs.

In this instance, Jackson has not properly exhausted his administrative remedies because he does not seek compassionate release based on the circumstances raised in his request to the warden of the facility where he is housed.  The Government, however, does not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief.  Therefore, it has waived any nonjurisdictional, procedural filing requirements.  *See McLean*, 2022 WL 44618, at *1 (holding that it is an abuse of discretion for the district court to deny a motion for compassionate release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement when the Government did not raise exhaustion).  Nevertheless, nothing in the motion indicates that extraordinary and compelling reasons exist to release Jackson from confinement or reduce his sentence.

     B.    <u>Criteria for Release</u>

         1.    <u>Family Circumstances</u>

Jackson contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release.  Jackson contends his mother, Joan Jackson ("Mrs. Jackson"), is suffering from colon cancer and that he is her only available caregiver.  With respect to a defendant's family circumstances, § 1B1.13(b)(3) provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

> (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

      (B)      The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

      (C)      The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

      (D)      The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when she is "deprive[d] of capacity or natural power," such that she is unable to provide self-care. *See   Incapacitate*, Merriam-Webster.com,   https://www.merriam-webster.com/ dictionary/incapacitate; *see also United States v. Bautista*, No. 3:15-cr-02720-DMS, 2024 WL 3014637, at *3 (S.D. Cal. June 14, 2024) ("Generally, a person is incapacitated when he is 'completely disabled' and cannot care for himself.").  Moreover, "[f]or guidance on what constitutes 'incapacitation,' courts have looked to [the BOP's] guidelines for handling inmate compassionate release requests." *United States v. Al Hunaity*, No. CR 18-723 (RBK), 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024); *see United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *2 (D.S.D. Mar. 13, 2024) ("[C]ourts have relied on the BOP program statement in determining that 'incapacitation' requires that the family member have suffered a severe injury or illness, leaving them incapable of acting as a caregiver.").  "'Incapacitation' is

defined as 'a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair.'" *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (quoting U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)); *see United States v. Crider*, No. 6:14-cr-00044-GFVT-HAI-1, 2024 WL 1291492, at *2 n.1 (E.D. Ky. Mar. 26, 2024); *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

Here, Jackson asserts that his mother was diagnosed with colon cancer in May 2021 and that she is receiving treatment. Jackson further states that she had shoulder replacement surgery which makes it difficult for her to lift objects. Jackson contends that "[s]ince the passing of her husband she has no help at all." Jackson also maintains that he is the only family member who is able to care for Mrs. Jackson on a consistent basis. Attached to Jackson's motion is an undated letter from Mrs. Jackson, indicating that she has stage 3 colon cancer and has had two shoulder replacements. She also writes that she lost her husband on April 14, 2022, and requests that her son be released to assist her. Attached to Jackson's motion are medical records documenting his mother's health conditions. The medical records indicate that, as of December 5, 2023, Mrs. Jackson was in complete remission with regard to her colon cancer.

Probation completed a report on April 10, 2024, as well as supplemental report on January 8, 2025. In the supplemental report, Probation confirms that Mrs. Jackson, age 70, completed chemotherapy treatment for her colon cancer in December 2021. Probation interviewed Mrs. Jackson and she reported that since her chemotherapy treatment, she has experienced motor/sensory neuropathy that affects her strength and mobility. She also confirmed that she has

had two shoulder replacements.  Probation reports that while Mrs. Jackson lives alone, she has three children who live within one mile of her residence.

In this situation, the court is unable to conclude that Jackson's mother is incapacitated such that her ailments render her completely disabled as required by controlling law.  The court notes that the medical records indicate that Mrs. Jackson received treatment for her colon cancer in 2021 and that she is now in complete remission as of December 5, 2023.  In fact, in her letter, Mrs. Jackson states that she *had* colon cancer.  Moreover, while Mrs. Jackson has undergone two shoulder surgeries, they both occurred over 18 months ago at the latest.  Mrs. Jackson does not indicate in her letter that she is confined to a bed or chair and cannot carry on any self-care.  She simply says that "[h]aving John here would be a gigantic help."  Thus, there is no evidence that Mrs. Jackson is completely unable to care for herself.

Even if his mother were truly incapacitated, Jackson has not demonstrated that he is the only available caregiver for his mother.  Courts have often denied motions for compassionate release in similar circumstances.  *See United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"); *United States v. Garcia*, No. H-21-162-01, 2024 WL 2114311, at *2 (S.D. Tex. May 10, 2024) (stating that the defendant failed to "establish that his mother has no other family members, such as brothers or sisters, who can assist with her care" and explaining that the defendant's "conclusory assertion that his wife is unavailable as a caregiver [did] not meet his burden of proof"); *United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *3 (D.S.D. Mar. 13, 2024) ("Without evidence that [the defendant] is the only available caregiver, the court cannot determine whether [the defendant]'s family circumstances give rise to

10

'extraordinary and compelling reasons' for her release."); *United States v. Wrice*, No. 10-cr-40065-JPG-1, 2023 WL 4030067, at *3 (S.D. Ill. June 15, 2023) (reasoning that the defendant had not "met her burden" where she "provide[d] no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that [her] stepfather requires a caretaker"); *United States v. Duprey,* No. CR 10-00101 (RK), 2024 WL 3873938, at *2 (D.N.J. Aug. 19, 2024) (observing that the defendant's mother "has multiple different caregivers who visit her a few times per week" and "has several other family members who live [nearby]"); *United States v. Yarbrough*, No. 2:06-CR-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023) (given the defendant's close family group, the court found that the defendant was not the only person who could serve as his mother's caregiver, and "there was no testimony that obviated the facial availability of other family members as potential viable caregivers").  In *United States v. Burden*, the defendant sought compassionate release on the grounds that he was the only person able to provide full-time care to his mother and father, ages 77 and 99, who were unable to care for themselves.  No. 3:00-CR-00263, 2024 WL 94402, at *3 (D. Conn. Jan. 8, 2024).  The court pointed out that the defendant's sister, with the help of her nephew, were providing significant assistance to the defendant's parents, commenting that it was clear that the defendant was not the "sole caregiver" available.  *Id*.  The court elaborated, "[h]is sister and nephew have provided extraordinary care.  Given they have work and other obligations, as do many relatives of elderly persons, they could obtain caregivers."  *Id*.  Ultimately, the court rejected Burden's motion for compassionate release on this ground, stating "the court cannot conclude that Mr. Burden is the only caregiver available."

As previously stated, Probation reports that Mrs. Jackson has three children who live within one mile of her home who could potentially serve as caregivers for her.  The Presentence Investigation Report ("PSR"), which was filed on October 4, 2017, notes that Jackson "has one sister and two brothers" and that he reports "he maintains positive relationships with his family members."  Further, the PSR states that Jackson has two adult children from his first marriage, one of whom lived in the same city as his mother at the time the PSR was prepared.  Jackson provides no explanation as to why his siblings or even his adult children could not serve as a caregiver for his mother.  Jackson also attached several letters of support to his motion, including letters from extended family members who may be potential caregivers for his mother.  As noted by the Government, "[n]owhere in [Jackson's] motion or in his attachments does it mention who, if anyone, has acted as caregiver for his mother since" her husband passed away in April 2022.

In any event, Jackson has not shown that he would be a suitable caretaker for his mother if he were to be released.  As explained below, Jackson has a lengthy history of drug and alcohol abuse and an extensive criminal history.  Based on the current record before the court, Jackson has not established that his family circumstances create "extraordinary and compelling reasons" justifying his release from imprisonment.

2.   <u>Rehabilitation</u>

Jackson maintains that his post-sentence rehabilitation, as evidenced by the courses he has taken, the programs he has completed, and his employment while incarcerated establishes extraordinary and compelling reasons for compassionate release.  Jackson also notes that he has remained "incident free" and plans to do volunteer work in his community.  Jackson attached multiple certificates documenting his participation in BOP programming.    Regarding

12

rehabilitation, the Sentencing Guidelines recognize:   "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected."  *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No.

13

16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). In any event, in *United States v. Comb*, the court found a similar BOP log listing a defendant's participation in rehabilitative programs to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order." No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025).

While Jackson has maintained a good disciplinary record while incarcerated, other courts have found similar conduct not to be extraordinary and compelling in order to merit early release. *See United States v. Campos*, No. 22-5216, 2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'" (quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean

disciplinary record"). Accordingly, Jackson's efforts, while laudable, do not satisfy the criteria for compassionate release.

III.    Amendment 821

Jackson also appears to seek a sentence reduction pursuant to Amendment 821 to the United States Sentencing Guidelines via 18 U.S.C. § 3582(c)(2). A district court is authorized to modify a previously imposed term of imprisonment when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 18 U.S.C. § 3582(c)(2). When a sentencing range has subsequently been lowered, the court may reduce a defendant's sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *United States v. Jones*, 136 F.4th 272, 279 (5th Cir. 2025); *United States v. Benton*, 546 F. App'x 365, 368 (5th Cir. 2013); *United States v. Doublin*, 572 F.3d 235, 237 (5th Cir. 2009). "[E]ligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in [U.S.S.G. § 1B1.10(d)] that lowers the applicable guideline range." *United States v. Carreon-Palacio*, 73 F. App'x 67, 68 (5th Cir. 2003) (quoting *United States v. Drath*, 89 F.3d 216, 217-18 (5th Cir. 1996)); *see United States v. Sanchez-Villarreal*, 857 F.3d 714, 720 (5th Cir. 2017). Thus, for an amendment to apply retroactively, it must be listed in U.S.S.G. § 1B1.10(d). "If a defendant is eligible to bring a § 3582(c)(2) sentence-reduction motion, the district court should then 'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case.'" *United States v. Green*, No. 24-30124, 2025 WL 429975, at *1 (5th Cir. Feb. 7, 2025) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

15

Jackson appears to seek a reduction under Part B of Amendment 821, which deals with "Zero-Point Offenders"—in other words, offenders who were not awarded criminal history points. Jackson states that he is eligible for a reduction under the amendment because he "does not have prior criminal history" and "does not have any disqualifying enhancements." Part B (Subpart 1 Only) of Amendment 821 is listed in U.S.S.G. § 1B1.10(d) and, therefore, applies retroactively. U.S.S.G. Supp. App. C, Amendment 825, Part A (Nov. 2023); *see Jones*, 136 F.4th at 275. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (no criminal history points) whose offense did not involve specific aggravating factors. U.S.S.G. Supp. to App. C, Amendment 821, Part B, Subpart 1, at 236-37 (Nov. 2023). In order to qualify for a sentence reduction under subpart 1 of Part B, the individual must meet all of the following criteria:

(1)    the defendant did not receive any criminal history points from Chapter Four, Part A;

(2)    the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3)    the defendant did not use violence or credible threats of violence in connection with the offense;

(4)    the offense did not result in death or serious bodily injury;

(5)    the instant offense of conviction is not a sex offense;

(6)    the defendant did not personally cause substantial financial hardship;

(7)    the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)    the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

16

(9)     the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10)    the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).

Although Jackson did not receive any criminal history points[2], he received an enhancement because the offense involved the possession of a firearm, an adjustment for having an aggravating role in the scheme, and an adjustment for threatening a witness.  Specifically, the PSR recounts that on July 7, 2016, during a search of Jackson's residence, law enforcement officers discovered methamphetamine and a firearm in his workshop.  Jackson was found responsible for the firearm and received a 2-level increase for possession of a dangerous weapon pursuant § 2D1.1. Furthermore, Jackson received a 2-level increase for his role in the offense pursuant to U.S.S.G. § 3B1.1.  The PSR explains that Jackson qualified as an organizer, leader, manager, or supervisor in the scheme because Jackson sent a co-defendant and his wife to Houston to pick up methamphetamine.  Finally, Jackson was given a 2-level adjustment for obstructing justice.  The PSR states " a witness reported the defendant drove past the witness's residence on August 19, 2016, and threatened to 'get' the witness for 'ratting' on the defendant."  The court finds that this conduct constitutes a credible threat of violence in connection with the offense.  Accordingly,

---

[2] Jackson has multiple prior criminal convictions, but they either did not fall within the time periods specified in U.S.S.G. § 4A1.2(e) or were for minor traffic infractions that are not counted pursuant to U.S.S.G. § 4A1.2(c)(2).  Therefore, Jackson was not assigned any criminal history points in his PSR calculation.

Jackson does not meet the criteria for a sentence reduction under Part B of Amendment 821. *See* U.S.S.G. § 4C1.1(a)(3), (7), and (10).

IV.    Section 3553(a) Factors

The court further finds that a reduction of sentence is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); 18 U.S.C. § 3582(c)(2) (also requiring courts to consider the factors set forth in § 3553(a)); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).

Here, Jackson's offense of conviction entails his participation in a drug trafficking conspiracy involving the distribution of 50 grams or more of methamphetamine "actual." In fact, law enforcement officers seized 945.9 grams of methamphetamine "actual" that were destined for Jackson's receipt in Louisiana from an individual he had sent to Houston, Texas, to retrieve and transport the drugs. Further, Jackson distributed a total of 55.9 grams of methamphetamine to a confidential informant on four occasions in May and June 2016. During the execution of a search warrant at his residence and workshop in June 2016, law enforcement officers discovered an additional 72.8 grams of methamphetamine, a revolver and other firearms, and a stolen vehicle. Jackson was determined to be a supervisor in the drug trafficking scheme and was found personally responsible for the distribution of at least 1.58 kilograms of methamphetamine "actual."

Jackson also attempted to obstruct justice by driving past the residence of a witness and threatening to "get" the witness for "ratting" on him.  Jackson's criminal history includes prior convictions for theft, aggravated assault, driving without a license, criminal damage to property, driving while intoxicated (2x), and disturbing the peace by public intoxication.  Jackson also has a long history of substance abuse, including the weekly use of methamphetamine and alcohol.

In addition, granting Jackson compassionate release after he has served less than half of his sentence would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022).  In the case at bar, releasing Jackson after serving less than half of his 262-month sentence would similarly minimize the impact of his crime

and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

Furthermore, courts have long recognized that "continued drug dealing does constitute a danger and threat to the community." *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-cr-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate release to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No. 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))).

On balance, Jackson's release from imprisonment is not warranted in light of the applicable factors set forth in § 3553(a). In view of the nature and circumstances of his offense of conviction, including his engaging in the obstruction of justice, his criminal history, and his history of substance abuse, the court cannot conclude that Jackson's early release from prison

would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.  Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  Jackson committed a serious offense that justified his sentence, and the circumstances he now identifies do not render that sentence unjust or inequitable. *See id*.

V.    Conclusion

In sum, Jackson has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 262-month sentence of imprisonment imposed upon Jackson for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this time.  Neither his family circumstances nor his efforts at rehabilitation merit a reduction of sentence under these circumstances.

Accordingly, Jackson's *pro se* Motion for Reduction of Sentence Pursuant to First Step Act 18 U.S.C. § 3582(c)(1)(A)(i) USSG Amendment Extraordinary and Compelling Reasons § 1B1.13 (#406) is DENIED.

SIGNED at Beaumont, Texas, this 27th day of June, 2025.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE